UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-mc-00016-JPH-MJD |
| | ) | |
| ORTHOPEDIC, P.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| JIAB SULEIMAN, DO, PC d/b/a PREMIER | ) | |
| ORTHOPEDICS, PREMIER MED, AND | ) | |
| PREMIER PHARM'S, | ) | |
| | ) | |
| Interested Party. | ) | |

**ORDER ON NON-PARTY'S MOTION TO
QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER**

This matter is before the Court on non-party Jiab Suleiman, DO, PC, d/b/a Premier

Orthopedics, Premier Med, and Premier Pharm's ("Suleiman") Motion to Quash Subpoena and

For Protective Order, [Dkt. 2]. For the reasons set forth below, the Court **DENIES** Suleiman's

motion.

## I.  Background

This matter concerns a subpoena issued in the course of post-judgment proceedings. On

January 17, 2018, the underlying action in this case, captioned *Allstate Insurance Company, et*

*al. v. Orthopedic, P.C., et al.*, No. 2:18-cv-10193-SJM-DRG (E.D. Mich.) (the "Michigan

Action"), commenced in the Eastern District of Michigan. In the Michigan Action, Plaintiffs

Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate

Property and Casualty Insurance Company, (collectively "Allstate"), alleged the existence of a

comprehensive fraudulent scheme in which Defendants submitted claims under Michigan's No-Fault Act for medical services that either were not actually provided or were unlawful, unreasonable, and unnecessary. *See* Michigan Action, ECF No. 1. The parties entered into a confidential settlement agreement resolving the Michigan Action on August 28, 2019. *See* Michigan Action, ECF No. 92-4. However, after Defendants Orthopedic, P.C., ("Orthopedic"), Muhammad Awaisi, M.D., ("Awaisi"), and US Healthcare MI, P.C., (collectively "Judgment Debtors") defaulted on the settlement agreement, Allstate obtained a judgment against them in the amount of $460,000 on March 4, 2020. *See* Michigan Action, ECF No. 104. Since then, "Allstate has diligently sought to satisfy the judgment, including by attempting to garnish funds and by pursuing discovery in an effort to track and identify assets the defendants sought to hide and/or that were improperly transferred." [Dkt. 3 at 10-11.]

Allstate alleges that recently-obtained evidence demonstrates "that just weeks before entering into the settlement, judgment debtor Orthopedic arranged to transfer all of its patients to Suleiman, which were then to be billed using the name of a separate entity apparently to avoid detection by Allstate." [Dkt. 3 at 8.] *See* [Dkt. 3-3] (June 27, 2019, email correspondence between Awaisi on behalf of Orthopedic, Melissa El Khoury, and Jiab Suleiman, D.O.). Due to this perceived financial relationship between the Judgement Debtors and Suleiman, Allstate subpoenaed Suleiman's financial records from JPMorgan Chase Bank ("Chase") pursuant to Federal Rules of Civil Procedure 45 and 69 on August 12, 2021. [Dkt. 3-2.] The subpoena requested the following information:

> Any and all documents from January 1, 2016 to the present relating to all open or closed accounts owned and/or controlled by Jiab Suleiman D.O., P.C., d/b/a Premier Orthopedics, Premier Med. Services, and/or Premier Pharm, including but not limited to account number [redacted]. Documents responsive to this request include but are not limited to:

     a.  Statements;
     b.  Signature cards;
     c.  Records of deposits, including deposited checks;
     d.  Records of withdrawals;
     e.  Cancelled Checks;
     f.  Debit and/or credit memos;
     g.  Corporate and/or partnership resolutions;
     h.  Applications;
     i.  Forms 1098, 1099, and/or backup withholding documents; and
     j.  Correspondence files, including, but not limited to:
         i.  Communications to JP Morgan Chase;
        ii.  Communications from JP Morgan Chase; and
       iii.  Memoranda, notes, records, and other documents.
     k.  Wire transfer records, including but not limited to, documents identifying any individual, entity, organization, bank, financial institution, agent, and/or representative that was party to any wire transfer.

[Dkt. 3-2 at 7-8.] The subpoena was addressed to Chase at 7610 W. Washington St., Floor 1, Indianapolis, IN 46231, which appears to be where the bank's National Subpoena Processing Center is located. Compliance was requested by September 2, 2021, at 11:00 a.m., and the place of compliance was listed as follows:

Produce by mail or electronic mail to: Smith & Brink, P.C., 350 Granite St., Suite 2204, Braintree, MA 02184, BCompston@smithbrink.com, LHackett@smithbrink.com, or physically produce to: Allstate Insurance Company, 5757 Decatur Blvd., Suite 260, Indianapolis, IN 46241.

[Dkt. 3-2 at 2.]

On August 24, 2021, Chase notified Suleiman of the subpoena and its intent to comply by mail, [Dkt. 3-6], although Suleiman did not receive Chase's notification until September 1, 2021, *see* [Dkt. 4 at 22]. On September 2, 2021, Suleiman faxed a letter to Chase requesting that Chase halt any production of documents pertaining to Suleiman personally or his business account(s), and stating that Suleiman's attorney would be moving to quash the subpoena. [Dkt. 4 at 28.] Suleiman then filed the instant Motion to Quash in the Michigan Action on September 7, 2021. [Dkt. 2.] Allstate filed a response on September 14, 2021, [Dkt. 3], to which Suleiman replied on

September 20, 2021, [Dkt. 4]. On September 23, 2021, Allstate filed a Motion for Leave to File a Sur-Reply, [Dkt. 5], which the Michigan court denied without a docket entry the following day.

More than five months later, on February 25, 2022, District Judge Stephen J. Murphy, III, of the Eastern District of Michigan transferred Suleiman's Motion to Quash and related Motion for Leave to File a Sur-Reply to this Court.[1] [Dkt. 1.] Judge Murphy explained that, because "the subpoena specifically requires compliance in Indianapolis, Indiana," the Southern District of Indiana is the proper forum to decide the motion under Federal Rule of Civil Procedure 45(d)(3)(A).[2] [Dkt. 1.]

## II.   Legal Standards

Federal Rule of Civil Procedure 45 allows a party to seek discovery from a non-party through the issuance of a subpoena, provided that the discovery sought is still within the broad scope of Federal Rule of Civil Procedure 26(b). This procedure also applies to post-judgment discovery, the rules of which "are quite permissive." *Republic of Argentine v. NML Capital, Ltd.,*

---

[1] Even though Judge Murphy denied Allstate's Motion for Leave to File a Sur-Reply, his Order specifically directed that motion to be transferred to this Court. Because it was previously denied by the Michigan court, Allstate's Motion for Leave to File a Sur-Reply, [Dkt. 5], is **DENIED AS MOOT**, and the proposed surreply was not considered by the Court in the instant matter.

[2] The Court notes that Indianapolis was not the sole place of compliance and, presumably, Allstate only included one of their Indianapolis addresses in order to provide a physical place of compliance within 100 miles from Chase's National Subpoena Processing Center. *See* Fed. R. Civ. P. 45(c)(2)(A). However, "[a] person commanded to produce documents, electronically stored information, or tangible things, . . . need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial." Fed. R. Civ. P. 45(d)(2)(A). This means that the 100-mile limit in Rule 45(c)(2)(A) "does not apply where documents can be mailed and do not require personal appearance." *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016); *see* *Walker v. Center for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) ("[T]he 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents need not appear in person at the place of production or inspection."); *see also* STEVEN BAICKER-McKEE ET AL., FEDERAL CIVIL RULES HANDBOOK 1061 (2021) ("ESI is typically exchanged electronically, rendering distance limitations inapplicable. Likewise, if the responding party can simply mail responsive paper documents, the distance limitation may not apply.") (citations omitted).

573 U.S. 134, 138 (2014); *National Union Fire Ins. Co. v. Van Waeyenberghe*, 148 F.R.D. 256, 256 (N.D. Ind. 1993); *Peterson v. Farrakhan*, 2009 WL 1543600, at *2 (N.D. Ind. June 2, 2009).

On timely motion, the district court where compliance is required **must** quash or modify the subpoena if, among other considerations, the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Similarly, the court **may** quash or modify the subpoena if the subpoena requires disclosure of commercial information. Fed. R. Civ. P. 45(d)(3)(B). Although district courts possess broad discretion in resolving discovery disputes, the movant ultimately bears the burden of establishing that a subpoena should be quashed. *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895 (S.D. Ind. 2006) (citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003)).

### III.  Discussion

As an initial matter, Allstate argues that Suleiman lacks standing to oppose the Chase subpoena because Suleiman has not demonstrated a personal interest or claim of privilege in the subpoenaed information.[3] [Dkt. 3 at 18-19.] In its reply brief, Suleiman responds that it does have standing because "information in the bank accounts is personal, privileged, and contains confidential commercial information, including information regarding employees, employee salaries and patient information." [Dkt. 4 at 8.]

---

[3] Allstate also argues that Suleiman's motion was untimely filed, which is reason alone to deny the motion to quash. [Dkt. 3 at 11.] While a motion to quash a subpoena must be timely filed, Fed. R. Civ. P. 45(d)(3)(A), the Federal Rules do not define "timely" and courts within the Seventh Circuit have yet to conclusively determine what constitutes a timely filing. *See Castelino v. Rose-Hulman Inst. of Tech.*, 2018 WL 3721391, at *2 (S.D. Ind. Aug. 6, 2018) (collecting cases). Nonetheless, "a court may excuse untimely objections in unusual circumstances and for good cause." *O'Hanlon*, 460 F. Supp. 2d at 894 (internal quotation marks and citation omitted). Given that Suleiman moved to quash within a week of learning of the subpoena's existence, the Court finds good cause to excuse Suleiman's lateness and will not deny Suleiman's motion on this ground. *See* Background, *supra*, at 2-4.

It is true that "[a] movant that is not the recipient of a subpoena ordinarily has no standing to seek to quash a subpoena unless 'the subpoena infringes upon the movant's legitimate interests.'" *HTG Capital Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015) (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)). "For example, '[b]usinesses have a legitimate interest in the privacy of their financial information that can confer standing to challenge a subpoena to a third party to produce that information.'" *Id.* (quoting *Countryman v. Cmty. Link Fed. Credit Union*, 2012 WL 1143572, at *3 (N.D. Ind. Apr. 3, 2012)); *see Green v. Cosby*, 216 F. Supp. 3d 560, 564 (E.D. Pa. 2016) (explaining that personal rights or interests exist in bank accounts, confidential settlement agreements, and protective orders); *see also Microsoft Corp. v. Tech. Enterprices, LLC*, 2008 WL 424613, at *1 (S.D. Ind. Feb. 13, 2008) ("The bank account subject to the subpoena belongs to Defendant . . . who clearly has a legitimate interest in the account."). Standing exists "'even where the movant's privacy interest is minimal at best.'" *HTG Capital Partners*, 2015 WL 5611333, at *3 (quoting *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012)).

Here, Suleiman has a legitimate interest in its business' financial information and therefore possesses standing to move to quash the subpoena. However, to the extent that Suleiman argues "information in the bank accounts is personal, privileged, and contains confidential commercial information," [Dkt. 4 at 8], Suleiman makes no effort to quash the subpoena on privilege or confidentiality grounds. Rather, Suleiman argues the information sought is not relevant, not proportional, and overbroad. The Court interprets Suleiman's overbreadth and proportionality arguments as an objection on the basis of undue burden, but "[o]nly the subpoena recipient has standing to file a motion to quash based on undue burden." STEVEN BAICKER-MCKEE ET AL., FEDERAL CIVIL RULES HANDBOOK, 1064 (2021) (citing

*Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 213-14 (D.S.D. 2018)); *Wyatt v. Kozlowski*, 2019 WL 3729262, at *2 (W.D.N.Y. Aug. 8, 2019). Chase has not objected to the subpoena. *See* [Dkt. 4 at 25]. Accordingly, the Court turns to Suleiman's only remaining argument concerning the relevance of the subpoenaed information.

### A.  The Subpoenaed Information is Relevant

Suleiman argues that the information sought by the Chase subpoena is irrelevant on several grounds. Suleiman first argues that, because "Allstate did not name Suleiman as a Defendant in this case, nor did Allstate allege that Suleiman was a knowing participant in any alleged 'conspiracy,'" Suleiman's financial information is not relevant. [Dkt. 2 at 16.] In response, Allstate maintains that "there is clear evidence of a financial relationship and a transfer of assets from the judgment debtors to Suleiman, P.C.," and thus "Allstate's subpoena to Chase Bank is an entirely reasonable and appropriate attempt to obtain discovery in support of its efforts to collect on its judgment entered in this matter on March 4, 2020." [Dkt. 3 at 7.] The Court agrees with Allstate.

Federal Rule of Civil Procedure 69 expressly provides that a judgment creditor "may obtain discovery from any person" to aid in execution of a judgment. Fed. R. Civ. P. 69(a)(2). This includes seeking discovery from non-parties, such as Suleiman. *See OHM Resource Recovery Corp. v. Industrial Fuels & Res., Inc.*, 1991 WL 146234, at *2 (N.D. Ind. July 24, 1991) (The Federal Rules permit a judgment creditor to obtain discovery on "information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets."). As Allstate underscores, "Allstate is entitled to discovery to assist it in unraveling Orthopedic's efforts to hide assets in order to avoid paying the judgment against it, including by obtaining bank records from the entity to which its assets were

transferred." [Dkt. 3 at 8.] It is therefore of no consequence that Suleiman was not involved in the Michigan Action.

Still, Suleiman argues that Allstate has presented insufficient evidence of Suleiman's "apparent participation in Orthopedic's efforts to conceal assets" to justify upholding the subpoena. [Dkt. 4 at 10.] The Court disagrees. Non-party discovery "may be permitted where [the] relationship between judgment debtor and nonparty is sufficient to raise a reasonable doubt about bona fides or transfer of assets." Wright & Miller, *Federal Practice & Procedure* § 3014 n.8 (1973) (citing *Strick Corp. v. Thai Teak Products Co., Ltd.*, 493 F. Supp. 1210 (E.D. Pa. 1980)). Allstate has raised that reasonable doubt here by presenting evidence indicating that Orthopedic may have fraudulently transferred its patients to Suleiman in order to evade Allstate's collection efforts. *See* [Dkt. 3-3]. Allstate is therefore entitled to inquire into the relationship between Suleiman and the Judgment Debtors. *See Cent. States v. GWT 2005 Inc.*, 2009 U.S. Dist. LEXIS 92917, at *8 (N.D. Ill. Oct. 6, 2009) ("[T]hird parties can in fact be subjected to discovery pursuant to Rule 69(a)(2) so long as the judgment creditor provides 'some showing of the relationship that exists between the judgment debtor and the third party from which the court . . . can determine whether the examination has a basis.'") (citing *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974)). Accordingly, Suleiman's Motion to Quash, [Dkt. 2], is **DENIED**.

That said, a judgment creditor's inquiry "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons." *Caisson Corp.*, 62 F.R.D. at 334. Allstate points out that "[t]he subpoena seeks only documents pertaining to Suleiman, P.C., and does not seek any personal financial records of its owners (including Jiab Suleiman, D.O.) or any other businesses." [Dkt. 3

at 11.] Still, Suleiman is concerned that Allstate is using the Chase subpoena to harass Suleiman

and as "a 'back door' attempt" to glean information to utilize in an unrelated lawsuit initiated by

Suleiman against Allstate, captioned *Executive Ambulatory Surgical Center, LLC, et al. v.

Allstate Fire & Casualty Ins. Co.*, No. 2:21-cv-10985-SFC-CI (E.D. Mich.). [Dkt. 2 at 6.] To

quell Suleiman's concern, the Court will enter a protective order protecting the confidentiality of

the information at issue and prohibiting the subpoenaed information from being used outside of

the Michigan Action.

### IV.   Conclusion

In sum, non-party Suleiman has not satisfied its burden of establishing that the Chase

subpoena should be quashed. Suleiman's Motion, [Dkt. 2], is therefore **DENIED**. Additionally,

Allstate's Motion for Leave to File a Sur-Reply, [Dkt. 5], is **DENIED AS MOOT**.

Counsel for Allstate are ordered to serve a copy of this Order and the simultaneously

issued Protective Order on Chase **no later than March 16, 2022**. Chase is hereby ordered to

provide responsive materials in accordance with this Order and the Protective Order **on or

before March 31, 2022**.

SO ORDERED.

Dated:  9 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

ANDREW H. DENINNO
King, Tilden, McEttrick & Brink, P.C.
350 Granite St.
Ste 2204
Braintree, MA 02184

BEN M. GONEK
Ben Gonek Law, P.C.
14290 Northline Road
Southgate, MI 48195-1820

JUSTIN HAAS
Haas & Goldstein, P.C.
31275 Northwestern Highway, Ste. 225
Farmington Hills, MI